FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 25, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AMANDA SIMONE M.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No.  2:18-CV-00349-RHW

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND REMANDED
TO COMMISSIONER**

Before the Court are the parties' cross-motions for summary judgment. **ECF Nos. 11, 13**. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 1383(c)(3) of the Commissioner of Social Security's final decision, which denied her application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 1-27. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDED TO COMMISSIONER ~ 1**

# I. Jurisdiction

Plaintiff filed her application for supplemental security income on May 18, 2015.[1] *See* AR 10, 198-203. Her application was initially denied on August 18, 2015, *see* AR 96-99, and on reconsideration on December 31, 2015. *See* AR 105-113. On February 15, 2016, Plaintiff filed a request for a hearing. AR 114-16.

A hearing with Administrative Law Judge ("ALJ") Stephanie Martz occurred on July 19, 2017. AR 31-66. On December 27, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for benefits. AR 7-27. On September 17, 2018, the Appeals Council denied Plaintiff's request for review, AR 1-6, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On November 9, 2018, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 3. Accordingly, her claims are properly before this Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

# II. Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

---

[1] Plaintiff alleged disability beginning on September 1, 2010. AR 198. However, for claims under Title XVI, benefits are not payable prior to the application's filing date. *See* 20 C.F.R. § 416.335.

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. § 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. § 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. § 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied

and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

## III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under this section is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). The Court reviews the Commissioner's legal conclusions de novo and factual findings for substantial evidence. *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 867 (11th Cir. 2019). With respect to the former, "'[t]he Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Id.* (quoting *Ingram v. Astrue*, 496 F.3d 1253, 1260 (11th Cir. 2007)); *see also Brawner v. Sec. of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). ALJs are allowed "inconsequential" errors as long as they are immaterial to the ultimate non-disability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 25 years old when she filed her application, which the regulations define as a younger person. AR 21, 67; *see* 20

C.F.R. § 416.963(c). She was enrolled in special education classes but graduated from high school and can read, write, and communicate in English. AR 59, 215, 217. She has no past relevant work. AR 20.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from May 18, 2015 (the date Plaintiff filed her application) through December 27, 2017 (the date the ALJ issued her decision). AR 11, 22.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application filing date. AR 12.

**At step two**, the ALJ found that Plaintiff had the following severe impairments: herniated discs of the lumbar spine, obesity, post-traumatic stress disorder, and personality disorder. AR 12.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 13.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), albeit with some additional limitations. AR 15. With respect to Plaintiff's physical abilities, the ALJ found that Plaintiff could lift and carry 10 pounds frequently, 20 pounds

occasionally, and had an unlimited ability to push and pull. AR 15. She could sit

for about six hours and stand and/or walk for six hours in an eight-hour workday

with regular breaks. AR 15. She could not have concentrated exposure to extreme

cold, vibration, or hazards. AR 15.

With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff could

understand, remember, and carry out simple tasks and instructions. AR 15. She

could adjust to routine and predictable work changes. AR 15. She could also work

alongside co-workers, but needed to work independently and not on team or

tandem tasks. AR 15.  She could not work with the general public. AR 15. Given

that Plaintiff had no past relevant work, transferability of job skills was not an

issue. AR 21.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work

experience, and residual functional capacity, there were jobs that existed in

significant numbers in the national economy that she could perform. AR 21. These

included the jobs of housekeeping cleaner, production assembler, and packing line

worker. AR 21.

## VI.   Issues for Review

Plaintiff argues that the ALJ: (1) improperly excluded the educational

records she submitted prior to the hearing, (2) improperly rejected or failed to

consider numerous conditions as severe impairments at step two of the sequential

evaluation process, (3) failed to properly analyze whether she met or equaled

various listings at step three, (4) improperly discredited her subjective pain

complaint testimony, and (5) improperly evaluated and weighed the medical

opinion evidence. ECF No. 11 at 2, 4-21.

## VII.  Discussion

### A.    The ALJ Improperly Rejected Plaintiff's Educational Records

Plaintiff argues that the ALJ erred by declining to admit, exhibit, or consider

the educational records that she submitted prior to the hearing.[2] *See* ECF No. 11 at

4-5. She contends that these records were important because she alleged disability

in part due to her learning disabilities and attention deficit disorders. *Id.*

In determining whether a claimant is disabled, an ALJ must "consider the

medical opinions in [the] case record together with the rest of the relevant evidence

[received]." 20 C.F.R. § 416.927(b). The regulations do not prescribe a fixed time

period for when evidence is considered no longer relevant. *Koepke v. Berryhill*,

---

[2] Plaintiff initially frames this issue as a failure by the ALJ to fully and fairly develop the record. *See* ECF No. 11 at 4-5. ALJs have an affirmative duty to gather additional information when (1) the evidence is ambiguous, or (2) the ALJ determines that the record is inadequate to properly evaluate the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). ALJs can discharge this duty by, for example, subpoenaing or submitting questions to the claimant's physicians, obtaining consultative examinations, continuing the hearing, or keeping the record open. *Id.*; 20 C.F.R. § 416.912(b).

This framework does not squarely apply here, though, because Plaintiff does not contend that some ambiguity in the record triggered the ALJ's duty to affirmatively seek out her educational records. *See, e.g.*, *Perdomo v. Astrue*, 2009 WL 2514181, at *12 (C.D. Cal. 2009) (an example of this). This would be more difficult to establish. *See id.* Here, Plaintiff submitted her educational records to the ALJ prior to the hearing and her real complaint—as she clarifies in her reply brief—is that the ALJ excluded them for an improper reason.

2019 WL 1385902, at *16 (N.D. Cal. 2019). ALJs have an affirmative obligation to develop the claimant's complete medical history for "*at least* the 12 months preceding" the application's filing date. 20 C.F.R. § 416.912(b)(1) (the "minimum 12-month development period") (emphasis added). However, if there is reason to believe that a claimant's disability began earlier, then ALJs have an affirmative responsibility to develop a complete medical history regardless of the application's filing date. 20 C.F.R. § 416.912(b)(1).

As long as it is submitted at least five business days before the hearing, ALJs "will generally admit into the record any evidence" that "is material to the issues in the case." *See* Soc. Sec. Admin. Hrgs., Appeals, & Litig. Law Man. ("HALLEX"), HALLEX § I-2-6-58(A). "Evidence is material if it is relevant, i.e., involves or is directly related to issues being adjudicated." HALLEX § I-2-6-58(A).

This Court and others have held that a failure to obtain or consider educational records can be reversible error in some situations. For example, in *Whiteside*, a claimant asserted that he met the listing for intellectual disorder. *Whiteside v. Colvin*, No. CV-11-243-RHW, 2013 WL 5373040, at *4 (E.D. Wash. 2013) (Whaley, J.). The ALJ rejected this claim, relying on a psychologist's opinion that the claimant's low IQ reflected lack of academic skill, not intellectual disability. *Id.* at *5-6. However, the psychologist did not consider the claimant's educational background nor did he specifically consider whether the claimant

attended special education classes in making his determination. *Id.* at *7. This Court reversed, holding that to properly evaluate whether the claimant met the listing for intellectual disorder, it was necessary to obtain his childhood educational records to determine if he was in special education or if his coursework was below average. *Id.* This was despite the fact that the claimant was 46 years old at the time of the hearing. *Id.* at *3.

In a case similar to this one, a claimant alleged disability based on various mental health impairments. *Koepke v. Berryhill*, 2019 WL 1385902, at *2 (N.D. Cal. 2019). He submitted educational records going back to elementary school that showed he was in special education classes from third grade onward. *Id.* at *3. These records also contained many psychological, behavioral, and psycho-educational evaluations that documented the claimant's attention problems, social withdrawal, anxiety, and depression. *Id.* at *3-4, 16. These records were old and predated his application filing date by many years. *Id.* at *16. The ALJ did not consider the records and denied his claim for benefits. *Id.*

On appeal, the claimant argued that the ALJ should have considered these records because they documented his severe mental health history and his need for special education services. *Id.* Relying on 20 C.F.R. § 416.912(b)(1)—as Plaintiff does here—he argued that the school records provided valuable longitudinal evidence of his mental health impairments and how they impacted his ability to

function before he applied for benefits. *Id.* In response, the Commissioner argued that the ALJ was not obligated to consider old records that predated the claimant's application. *Id.* The Commissioner also argued that the ALJ was aware of the impairments that were identified in these records and "focused on their functional impact." *Id.*

The court held that the claimant's educational records were relevant to the issues in the case and that the ALJ therefore erred in failing to consider them. *Id.* at *16-17. The court expressly rejected the Commissioner's argument asking it to assume that the ALJ was aware of the impairments but simply chose to "focus[] on their functional impact." *Id.* at *16.

In this case, Plaintiff alleged in her application that she was disabled in part due to learning disabilities and ADD/ADHD. AR 67, 216. A few months prior to the hearing, Plaintiff's counsel mailed the ALJ copies of Plaintiff's educational records to support these claims. AR 289-90, 300. The ALJ declined to admit or exhibit the records on the basis that they were "at least 1 year prior to the [alleged onset of disability], and older." AR 300. There was no explanatory citation given, but it is clear the ALJ relied on the minimum 12-month development period outlined in 20 C.F.R. § 416.912(b)(1). Because the ALJ declined to exhibit the records, the hearing office did not include them in the administrative record and they are unavailable for the Court's review.

The ALJ rejected Plaintiff's educational records by applying the minimum 12-month development period as if it were a hard-and-fast and inflexible rule. In other words, the ALJ interpreted 20 C.F.R. § 416.912(b)(1) as establishing a fixed 12-month cutoff for relevancy. However, older evidence is still relevant under this regulation when there is reason to believe that the disability began in that time period. 20 C.F.R. § 416.912(b)(1). As *Whiteside* and *Koepke* explain, even very old educational records can be highly relevant when the claimant alleges longstanding mental impairments. This is especially true with neurodevelopmental disorders (like learning disabilities and ADD), which are typically proven by evidence of their onset during childhood and adolescence. *See* 20 C.F.R. § 404 Subpt. P. App. 1, Listing 12.00(B)(9). Assuming that Plaintiff's educational records, although old, were "directly related to issues being adjudicated," they should have been admitted. HALLEX § I-2-6-58(A).

Importantly, the ALJ did *not* reject these records on the basis that she reviewed them but ultimately concluded that they were not relevant or that she found no "reason to believe that development of an earlier period [was] necessary."[3] 20 C.F.R. § 416.912(b)(1). Had the ALJ applied the proper legal standard but made such a factual determination, her decision would be subject to a

---

[3] The ALJ could have, for example, found that the school records were irrelevant because they only related to Plaintiff's physical education classes, etc.

more deferential standard of review. However, the ALJ applied an incorrect legal standard by interpreting 20 C.F.R. § 416.912(b)(1) as establishing a fixed 12-month cutoff for relevancy. *See* AR 300; *Brawner*, 839 F.2d at 433.

The Commissioner makes an argument similar to the one that was made and rejected in *Koepke*: that the ALJ was likely aware of Plaintiff's alleged learning disorder/ADD and rejected her school records based on an implied finding that these conditions were not medically determinable. *Compare* ECF No. 13 at 14-15, *with Koepke*, 2019 WL 1385902, at *16. However, as discussed *infra* at 15-17, the ALJ never acknowledged or considered these alleged impairments at step two and consequently the basis for her decision "is impossible to determine." *Koepke*, 2019 WL 1385902, at *16.

The Commissioner also argues that any error was harmless because the educational records "are insufficient to establish a diagnosis, let alone functional impairments, regarding Plaintiff's present claim." ECF No. 13 at 15-16. The problem is that because the ALJ declined to admit or exhibit the records, they are not part of the administrative record and therefore unavailable for the Court's review. As a result, there is no way for the Court to determine whether this error was harmless or that it necessarily was harmful, either. In these situations, the Court is required to remand for further proceedings. *Buchanan v. Colvin*, 636 F.

App'x 414, 416 (9th Cir. 2016); *Koepke*, 2019 WL 1385902, at *16-17; *Gilbert v. Colvin*, 2014 WL 1577783, at *2-3 (C.D. Cal. 2014).

**B.    The ALJ Erred in Considering Plaintiff's Impairments at Step Two**

Plaintiff contends the ALJ improperly evaluated or failed to evaluate numerous impairments at step two of the sequential evaluation process. ECF No. 11 at 5-9. Specifically, she argues that the ALJ erred in either rejecting or failing to discuss the following conditions: (1) learning disorder and ADD/ADHD, (2) bipolar disorder, (3) depression, and (4) interstitial cystitis. *Id.* at 6-9.

At step two in the sequential evaluation, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). The claimant has the burden to establish that he or she (1) has a medically determinable impairment and, (2) that the impairment is severe. 20 C.F.R. § 416.912(a). In doing so, the claimant must provide objective medical evidence—a claimant's statements regarding his or her symptoms are insufficient, as are a claimant's reports of a diagnosis. 20 C.F.R. § 416.921. A claimant must also provide a diagnosis from an "acceptable medical source," such as a licensed physician or psychologist. 20 C.F.R. § 416.921. The impairment must also last or be expected to last for at least 12 months. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii).

When arguing on appeal that the ALJ failed to include a severe impairment at step two, a claimant cannot simply point "to a host of diagnoses scattered

throughout the medical record." *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1207 (D. Or. 2019); *Michelle S. v. Comm. of Soc. Sec.*, No. 1:18-CV-03199-RHW, ECF No. 17, at 14, 17-18 (E.D. Wash. 2020). Rather, to establish harmful error, a claimant must specifically identify functional limitations that the ALJ failed to consider in the sequential analysis. *Cindy F.*, 367 F. Supp. 3d at 1207.

### 1. Learning disability, ADD/ADHD

Plaintiff first argues that the ALJ entirely failed to analyze or even acknowledge the impairments of learning disability or ADD/ADHD, which she alleged were disabling in her application for benefits. ECF No. 11 at 6-7; *see* AR 67, 216.

In a case virtually identical to this one, a claimant applied for benefits alleging that she was disabled in part based on a learning disorder and dyslexia. *Lobato v. Astrue*, 2010 WL 3521781, at *6 (C.D. Cal. 2010). In support of her contention, the claimant relied on her illiteracy, her history of special education, and a form from her treating physician that noted her low comprehension span. *Id.* There was no evidence in the record that the claimant was treated for any learning disorder or dyslexia. *Id.* In his decision, the ALJ did not substantively discuss these claimed impairments nor analyze their effect on the claimant's ability to work. *Id.* The court reversed, holding that the ALJ erred at step two by entirely failing to

consider whether these alleged mental conditions existed and if so, whether they were severe. *Id.* at *7.

Like in *Lobato*, there is no evidence in the medical record that Plaintiff was treated for either of these conditions, nor does Plaintiff point to any diagnosis from an acceptable medical source. ECF No. 11 at 6-7; *Lobato*, 2010 WL 3521781, at *6. However, also like in *Lobato*, Plaintiff alleged in her application and in her function report that she was disabled in part due to a learning disorder and ADD/ADHD. AR 67, 216, 245. She testified that she was in special education classes, that she graduated high school when she was 20 years old, and that the school had to administer special verbal tests so that she could graduate—which she did but "barely." AR 59. She attempted to submit her educational records to corroborate all of this, which the ALJ improperly rejected. AR 300. She further testified that it took her significantly longer than most people to learn how to do things. AR 59-60. Two mental health counselors and a pharmacist (all non-acceptable medical sources) noted learning disorder and ADD diagnoses. AR 663-64, 687-88. Despite this, the ALJ failed to consider or even acknowledge these alleged mental conditions in her decision. *See* AR 12-22.

The Commissioner argues that Plaintiff does not identify a diagnosis from an acceptable medical source, as the regulations require. *See* ECF No. 13 at 16. While this is true, the *ALJ* never found that. *See Stout*, 454 F.3d at 1054 (court is

"constrained to review the reasons the ALJ asserts"). Had she done so, there may have been no error. *Id.* But because she did not discuss the issue at all, "[t]hat failure constitutes error." *Lobato*, 2010 WL 3521781, at *7.

## 2. Bipolar disorder

Plaintiff also argues that the ALJ improperly rejected the alleged impairment of bipolar disorder. ECF No. 11 at 7.

The ALJ acknowledged that Plaintiff had been diagnosed with bipolar disorder. AR 12 (citing AR 314, 381). However, the ALJ found that insufficient clinical evidence supported this diagnosis and that "it seemed to be based on a self-reported history." AR 12 (citing AR 315, 382). To support this conclusion, the ALJ relied on an October 2015 psychiatric evaluation that was performed by a pharmacist. *See* AR 12 (citing AR 645). In the evaluation, the pharmacist noted that Plaintiff denied "ever having periods of time longer than a single night without sleep and deni[ed] usual hypomanic or manic symptoms." AR 645.

The ALJ's determination is not supported by substantial evidence. In spite of this comment, the pharmacist nevertheless diagnosed Plaintiff with bipolar disorder. AR 647. Moreover, the ALJ relied entirely on one day[4] where Plaintiff denied symptoms, *see* AR 12, yet the record is rife with reports, findings,

---

[4] The ALJ also cited two additional records, but those actually support Plaintiff's assertion that she suffered from bipolar disorder. *See* AR 12 (citing AR 315, 382).

discussions, and diagnoses of this condition. *E.g.*, AR 314, 539-44, 647, 652, 655-58, 662-63, 701. The ALJ's reasoning as articulated in the decision is insufficient to support her conclusion that bipolar disorder was not a medically determinable impairment.

### 3. Depression

Plaintiff also argues that the ALJ erred in finding that depression was not a medically determinable impairment. ECF No. 11 at 8.

The ALJ acknowledged that psychologist Rebekah Cline, Psy.D., diagnosed Plaintiff with major depressive disorder, PTSD, conduct disorder, and personality disorder. AR 18; *see* AR 783. The ALJ noted, however, that "[a]nother evaluator, Dr. VanFossen, disagreed that depressive disorder and conduct disorder were supported." AR 18. Dr. VanFossen "explained that antisocial personality disorder was not ruled out in lieu of the conduct disorder diagnosis and there was a significant overlap of symptoms." AR 18 (citing AR 787). Based on Dr. VanFossen's conflicting opinion, the ALJ concluded that depressive disorder was not a medically determinable impairment. AR 18.

It is the ALJ's prerogative to weigh the evidence and ALJs are entitled to reject alleged impairments based on conflicting and more persuasive medical opinions. *See Thomas v. Barnhart*, 278 F.3d 947, 954-59 (9th Cir. 2002). However, the issue is that the ALJ did not weigh Dr. VanFossen's opinion at all or provide

any substantive reasons as to why it was more credible than Dr. Cline's. *See* AR 18, 20. The ALJ simply asserted without explanation that it was more persuasive and then rejected the condition of depression on this basis. *See* AR 18, 20; *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014). At least for the reason stated in the decision, this was error. *Id.*

### 4.     Interstitial cystitis

Finally, Plaintiff argues that the ALJ again failed to analyze or acknowledge the impairment of interstitial cystitis, which she alleged was disabling in her application for benefits. ECF No. 11 at 8-9; *see* AR 67, 216. Her urologist, Mark Uhlman, M.D., diagnosed the condition in November 2015 and performed a cystoscopy in January 2016. AR 863-64, 870-74.

The Commissioner responds that the procedure was apparently successful in correcting the problem and therefore any error was harmless. ECF No. 13 at 18. In so arguing, the Commissioner appears to imply that this condition did not meet the 12-month durational requirement. *See* 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). However, Dr. Uhlman noted that the purpose of the cystoscopy was to rule out a particular cause so he could "further evaluate" Plaintiff's severe irritative symptoms. AR 866. And even if the surgery had corrected the problem (and there is no evidence it did), the ALJ did not discuss the issue at all and "[t]hat failure constitutes error." *Lobato*, 2010 WL 3521781, at *7.

### 5. Whether the step two error was harmful

The Commissioner argues that Plaintiff has not shown what additional functional limitations would be mandated even if the ALJ had included these impairments at step two. ECF No. 13 at 18. The Commissioner is correct that to establish harmful error, a claimant must identify limitations that the ALJ failed to consider. *Cindy F.*, 367 F. Supp. 3d at 1207. Although the step two errors outlined above may not be an independent basis to reverse the ALJ's decision, remand is nevertheless required for the ALJ to apply the proper legal standard with respect to Plaintiff's educational records. Accordingly, upon remand, the ALJ shall re-evaluate (or evaluate in the first instance) whether the four conditions identified above should be included as severe impairments at step two.

### C. Plaintiff's Remaining Arguments and Remedy

Plaintiff also argues that the ALJ erred in analyzing whether her impairments met or equaled various listings, in assessing her credibility, and in weighing the medical opinions of Dr. Cline and Jim Dunn, LMHC. *See* ECF No. 11 at 9-21. However, the Court's conclusion that the ALJ erred in excluding Plaintiff's educational records and in evaluating her impairments will likely affect the analysis with respect to whether a listing has been met (Plaintiff argues for several based on these conditions), whether Plaintiff's symptom complaints are fully credible, and whether Dr. Cline's and Mr. Dunn's opinions remain

persuasive. *Koepke*, 2019 WL 1385902, at *17. Accordingly, the Court does not reach these additional arguments.

The Court can either remand the case for additional proceedings or for an award of benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for further proceedings is appropriate when there are outstanding issues that must be resolved before a disability determination can be made, or when there is a need to resolve ambiguities in or otherwise enhance the record. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014); *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011). This is the case here.

Upon remand, the ALJ shall: (1) review Plaintiff's educational records and reconsider whether they should be admitted in light of the legal standard articulated above, (2) re-evaluate (or evaluate in the first instance) whether the four conditions discussed above should be included as severe impairments at step two, (3) re-evaluate (or evaluate in the first instance) the applicable listings, and (4) if necessary, further develop the record, re-evaluate the medical opinion evidence, and re-evaluate Plaintiff's credibility. The ALJ shall recalculate the residual functional capacity considering all impairments and then evaluate Plaintiff's ability to perform past relevant work as well as work available in the national economy. If necessary, the ALJ shall obtain supplemental evidence from a vocational expert. The ALJ shall then issue a new decision.

## VIII.  Order

Having reviewed the record, the ALJ's findings, and the parties' briefing, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2.      Defendant's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3.      The Commissioner's decision to deny Plaintiff's application for Social Security benefits is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g).

4.      Judgment shall be entered in favor of Plaintiff and against Defendant and the file shall be **closed**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this March 25, 2020.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge